**Opinion filed July 16, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00272-CV

_____

### JOHN ANDREW DELANEY, Appellant

### V.

### FNA 2019-1, LLC AND ECTOR COUNTY APPRAISAL DISTRICT FOR ECTOR COUNTY; ECTOR COUNTY INDEPENDENT SCHOOL DISTRICT; ECTOR COUNTY HOSPITAL DISTRICT; ODESSA COLLEGE; AND CITY OF ODESSA, Appellees

**On Appeal from the County Court at Law**
**Ector County, Texas**
**Trial Court Cause No. CC-21-0261-CV**

### MEMORANDUM OPINION

This appeal concerns the judicial foreclosure of a transferred tax lien under Section 32.06 of the Texas Tax Code and the foreclosure of additional delinquent tax liens asserted by intervening taxing units. *See* TEX. TAX CODE ANN. § 32.06

(West Supp. 2025), § 33.44(a) (West 2015).  Pro se Appellant, John Andrew DeLaney, a co-owner[1] of real property in Ector County, entered into an agreement with FNA DZ, LLC (FNA DZ) concerning the payment of delinquent property taxes. The agreement was secured by the subject property and later assigned to a separate entity, Appellee FNA 2019-1, LLC (FNA 2019).  Following a default, FNA 2019 filed the underlying suit seeking to recover the delinquent ad valorem taxes and to foreclose its transferred tax lien on the property.  Appellee Ector County Appraisal District for Ector County intervened to recover the delinquent taxes owed to the taxing units, Ector County, Ector County Independent School District, Ector County Hospital District, Odessa College, and City of Odessa (collectively, the Ector County Appellees).  The trial court entered a default judgment in favor of Appellees, awarding FNA 2019 $32,894.55 for the 2009–2016 tax years and awarding the Ector County Appellees $25,616.02 for the 2018–2023 tax years.  We liberally construe Appellant's brief challenging the sufficiency of the evidence in support of the judgment in favor of FNA 2019.  We affirm.

## I. *Factual and Procedural History*

The following facts are undisputed.  Daina Ann Dominguez, Michael Scott DeLaney, Charles N. DeLaney, III, and Appellant owed $13,355.19 in outstanding taxes, penalties, interest, and collection expenses for the 2009–2016 tax years on their jointly owned real property in Ector County.  On October 19, 2016, all four individuals executed a "Property Tax Lien Payment Agreement" (the Note) made payable to FNA DZ, in the principal amount of $15,319.19.  The agreement was secured by the subject property.  Appellant and the co-owners agreed to repay FNA DZ, the principal amount, plus interest, through monthly payments of

---

[1]Daina Ann Dominguez, Michael Scott DeLaney, and Charles N. DeLaney, III are co-owners of the subject property and were named defendants in the underlying suit but did not file a notice of appeal; therefore, they are not parties to this appeal.

approximately $275. The agreement defined events of default, which included the failure to make timely payments and the failure to timely pay future taxes on the subject property. The agreement further cautioned that FNA DZ, as transferee, reserved the right to exercise certain remedies in the event of default, including foreclosure or judicial sale of the subject property. The parties also executed a "Property Tax Lien Contract" (Deed of Trust) and signed sworn documents authorizing transfer of the tax lien. The transferred tax lien was recorded in the Ector County property records. On May 26, 2020, FNA DZ assigned the Note, Deed of Trust, and transferred tax lien to FNA 2019, effective December 6, 2019. Appellant and the co-owners subsequently defaulted, and FNA 2019 sought to foreclose on the subject property.

FNA 2019 filed suit against Appellant and the co-owners on July 27, 2021. The appraisal district later intervened, seeking foreclosure of additional delinquent taxes. None of the defendants filed a general answer, but Appellant filed a "Request for 'Continuance'" on October 18, 2021. In the motion, Appellant cited the need for additional time to obtain counsel, gather evidence, and "assess the chain of command in the sale or acquirement of said debt by [FNA 2019] as said debt known to [him] was owed solely to Kelsey-Hunter,[2] not FNA [2019]."

Prior to trial, FNA 2019 filed copies of the notice of default and intent to accelerate sent to the property owners, the notice of acceleration sent to the property owners, an account statement reflecting accrued late charges, the assignment of the tax lien, the Note, and Deed of Trust—the latter two documents were signed by the named defendants, including Appellant. The record also contains certified copies of tax records showing that the defendants owed $23,691.97 in taxes, penalties, interest, and statutory attorney's fees for tax years 2018, 2019, 2021, 2022, and 2023.

---

[2]Kelsey-Hunter of Texas, LLC appears to be an agent of FNA 2019-1, LLC.

Appellant filed a second motion for continuance. Appellant argued that he had not received timely notice of the trial setting and requested a continuance to gather evidence against Dominguez, a co-defendant. Appellant alleged that Dominguez had fraudulently transferred sole title of the subject property to herself. The trial court denied Appellant's motion for continuance.[3] Following a bench trial, at which none of the defendants appeared, the trial court entered a final judgment in favor of Appellees.

Appellant filed two post-judgment motions. In a motion entitled "Motion to Correct and Reform Judgment," Appellant argued that the *style* of the case did not include Michael Scott DeLaney as a defendant and incorrectly added a suffix to Appellant's name.[4] Appellant's motion did not assert a substantive error. A "Motion to Vacate Judgment" followed, wherein Appellant argued that one of the named defendants, Dominguez, was "guilty of criminal fraud and forgery" and alleged she had "change[d] the property . . . out of the names of Charles N. DeLaney II and Wanda J. DeLaney." Appellant further alleged that after he "let [Dominguez] help [him] get a tax loan," Dominguez stole all his belongings from the property. Appellant reiterated his claim that he did not receive proper notice of the trial setting. Neither motion included supporting evidence. The motions were ultimately overruled by operation of law. TEX. R. CIV. P. 329b.

---

[3]We note that the final trial date was the third setting. On July 31, the trial court signed an order resetting the trial for September 25. TEX. R. CIV. P. 245 (The trial court may reset a case to a later date upon reasonable notice to the parties.). Notice was sent to Appellant by first class and certified mail; in his motion for continuance, Appellant admitted to actual notice of the final trial date nine days prior to trial.

[4]Contrary to Appellant's assertions, Michael Scott appears as a defendant and there is no suffix affixed to Appellant's name within the body of the judgment. While "III" *followed* Charles N. DeLaney's name, it did not *begin* the next name—that of Appellant

## II. *Preservation of Issues*

Appellees argue that Appellant failed to sufficiently preserve any issue for our review on appeal because none of the issues raised on appeal were ever properly argued before the trial court, or do not constitute appellate issues at all, and Appellant's brief violates the Rules of Appellate Procedure.

We agree that Appellant's briefing lacks any table of contents, index of authorities, statement regarding oral argument, issues presented, summary of the argument, and arguments that reference relevant parts of the record as well as relevant case law—as required by the Rules of Appellate Procedure. *See* TEX. R. APP. P. 38.1; *see also Bellamy v. Allegiance Benefit Plan Mgmt., Inc.*, 696 S.W.3d 751, 762 n.6 (Tex. App.—Eastland 2024, no pet.) (declining to address an argument devoid of any citations to appropriate authority).

Furthermore, Appellant asserts complaints seemingly unrelated to an appeal of a delinquent tax lien foreclosure case. Appellant's brief primarily focuses on unpleaded claims alleging that Dominguez, in a conspiracy with FNA 2019, defrauded him and illegally transferred title on or around June 15, 2020. Appellant makes no mention of the taxing units in his brief, nor does he address the delinquent tax payments. Appellant also does not re-urge his argument that he was provided untimely notice of the trial setting.

A judgment must be based upon the live pleadings, and a party may not sustain a favorable judgment on an unpleaded cause of action, in the absence of trial by consent. *Jones v. Uribe*, 695 S.W.3d 1, 9 n.7 (Tex. App.—Amarillo 2024, pet. denied) (citing *Stoner v. Thompson*, 578 S.W.2d 679, 682–83 (Tex. 1979)). Thus, to the extent Appellant means to raise an unpleaded counterclaim against Appellee FNA 2019 or crossclaim against co-defendant Dominguez, unpleaded complaints were not tried by consent here and are legally irrelevant. *See id.*; *White v. Ector Cnty. Appraisal Dist.*, No. 11-17-00059-CV, 2017 WL 6395500, at *1–2

(Tex. App.—Eastland Dec. 14, 2017, pet. denied) (mem. op.) (concluding pro se appellant's unpleaded complaints in appeal of a delinquent tax case were irrelevant and not before the court); *see generally* TEX. R. CIV. P. 97.

Pro se litigants are not exempt from compliance with the applicable laws and procedural rules. *Unger Tex. Stone, LP v. Deere Credit, Inc.*, No. 11-24-00276-CV, 2026 WL 1025552, at *4 n.6 (Tex. App.—Eastland Apr. 16, 2026, no pet.). "A pro se litigant is required to properly present his case on appeal just as he is required to do at the trial court." *Manning v. Johnson*, 642 S.W.3d 871, 884 (Tex. App.—Texarkana 2021, no pet.) (quoting *In re C.N.M.*, No. 10-10-00178-CV, 2011 WL 1049383, at *1 (Tex. App.—Waco Mar. 23, 2011, no pet.) (mem. op.)); *White*, 2017 WL 6395500, at *1–2. In addition, "to preserve a complaint for appeal, the complaint raised on appeal must be the same as the complaint presented to the trial court." *Windsor v. Round*, 591 S.W.3d 654, 674 (Tex. App.—Waco 2019, pet. denied). With respect to the complaints outlined above, Appellant has not preserved them for appeal. TEX. R. APP. P. 33.1(a).

### III. *Sufficiency of the Evidence*

Out of an abundance of caution, however, we broadly construe Appellant's complaint against FNA 2019 as some amorphous legal and factual sufficiency challenge. *See Cromwell v. Anadarko E&P Onshore, LLC*, 716 S.W.3d 515, 521 (Tex. 2025) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included." (quoting TEX. R. APP. P. 38.1(f))).

### A. *Post-Answer Default*

Before addressing the merits, however, we must first determine the effect of Appellant's pretrial filings. We note that the record reveals a discrepancy regarding the trial court's judgment, which characterizes the disposition as a judgment against a non-answering party. Although Appellant did not file a conventional answer, he filed two motions for continuance.

6

The determination of what constitutes an answer by a defendant is fact-specific. *Unger Tex. Stone*, 2026 WL 1025552, at *4. A reviewing court looks to the substance of a pleading to determine the nature of the filing, not merely at the form of title given to it. *Id.* (citing *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980)). This principle applies with particular force when reviewing pleadings filed by pro se litigants. *Aaron v. Fisher*, 645 S.W.3d 299, 312 (Tex. App.—Eastland 2022, no pet.) (While pro se litigants are not exempt from compliance with the applicable laws and procedural rules, pro se pleadings must nonetheless be liberally construed.).

In *Smith v. Lippmann*, the Texas Supreme Court specifically addressed what may qualify as a proper answer when a party is proceeding pro se. *Smith v. Lippmann*, 826 S.W.2d 137 (Tex. 1992). The court held that "a defendant, who timely files a pro se answer by a signed letter that identifies the parties, the case, and the defendant's current address, has sufficiently appeared by answer." *Id.* at 138. The *Lippmann* court, however, did not address whether a pro se filing that included some, but not all of the factors, would also be sufficient. *Id.*

Since *Lippmann*, this court, as well as several sister courts, have held that a pro se filing that contains some, but not all, of the characteristics expressed in *Lippmann* may qualify as an answer. *Unger Tex. Stone*, 2026 WL 1025552, at *5 (collecting cases); *see Aaron*, 645 S.W.3d at 311–12 (concluding pro se correspondence, "although lacking in style and the routine denials and defenses one typically notes in a formal pleading, identified the cause number assigned to the suit" and addressed the nature of the suit and was therefore sufficient to constitute an original answer); *In re R.K.P.*, 417 S.W.3d 544, 550 (Tex. App.—El Paso 2013, no pet.) (concluding a pro se filing requesting continuance constituted an answer).

The critical inquiry, therefore, is whether Appellant's filings demonstrate an intent to answer and contain sufficient information to constitute an appearance.

7

*Unger Tex. Stone*, 2026 WL 1025552, at *5. In Appellant's first motion for continuance, filed twenty-six days after he was served on September 22, 2021, he identified the parties and cause number, and briefly addressed the allegations, arguing that he needed "time to assess the chain of command in the sale or acquirement of the said debt by" FNA 2019. In his second motion, Appellant again identified the parties and cause number, as well as his address, and raised several allegations in response to Appellees' pleadings. These characteristics are sufficient to constitute an answer in this case. *See Aaron*, 645 S.W.3d at 311–12.

Accordingly, Appellant's pro se motions—when viewed liberally and according to their substance rather than title—constitute an answer to the suit. *See Unger Tex. Stone*, 2026 WL 1025552, at *5.

Because an answer was effectively on file, the trial court's judgment must be reviewed under the legal standard applicable to a post-answer default judgment.[5] *See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183 (Tex. 2012).

A default judgment caused by a defendant's failure to appear for trial after answering a suit is a post-answer default. *Id.* Under long-established Texas precedent, a post-answer default "constitutes neither an abandonment of the defendant's answer nor an implied confession of any issues thus joined by the defendant's answer." *Id.* As the merits of the plaintiff's claim remain at issue, judgment cannot be rendered on the pleadings alone; rather, the plaintiff must appear

---

[5]Crucially, Appellant does not raise the trial court's entry of a "no-answer default judgment" or its conclusion that Appellant failed to file an answer as an issue on appeal. *In re L.A.*, No. 02-25-00368-CV, 2025 WL 3683989, at *1–2, *2 n.3 (Tex. App.—Fort Worth Dec. 18, 2025, no pet.) (mem. op.); *Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error."). In any event, because the record contains sufficient evidence supporting the trial court's judgment, as we discuss below, and Appellant received actual notice of the trial setting, any error in the trial court's conclusion that he did not file an answer would be harmless. *See* TEX. R. APP. P. 44.1(a).

at the trial and offer evidence to prove its claim. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009); *Rouhana v. Ramirez*, 556 S.W.3d 472, 477 (Tex. App.—El Paso 2018, no pet.).

B. *Standard of Review*

In an appeal from a judgment after a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Villa v. Villa*, 664 S.W.3d 415, 418 (Tex. App.—Eastland 2023, no pet.). However, when, as in this case, no findings of fact and conclusions of law are made, we must imply all necessary findings to support the trial court's judgment. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). Implied findings of fact may be challenged for legal and factual sufficiency in the same manner as jury findings or a trial court's express findings of fact when the record includes a reporter's record. *Bradberry*, 526 S.W.3d at 480; *see Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

"We review the legal sufficiency of the evidence supporting a post-answer default judgment under the same standard of review governing the legal sufficiency of the evidence at a contested trial." *Tex. G & S Invs., Inc. v. Constellation Newenergy, Inc.*, 459 S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The standard for legal sufficiency is whether the evidence in support of the challenged finding rises to a level that would enable reasonable and fair-minded people to arrive at the verdict under review. *W & T Offshore, Inc. v. Fredieu*, 610 S.W.3d 884, 897–98 (Tex. 2020); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). When a party challenges the legal sufficiency of the evidence supporting an adverse finding on which that party did not have the burden of proof at trial, the party must demonstrate that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex.

9

2011).  Under a legal sufficiency review, we consider all the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not.  *City of Keller*, 168 S.W.3d at 807, 822, 827.  We may not substitute our judgment for that of the factfinder if the evidence falls within the zone of reasonable disagreement.  *Id.* at 822.  This standard also prevents a reviewing court from substituting its judgment for the factfinder on matters of credibility.  *Id.* at 816–17.

We will sustain a challenge to the legal sufficiency of the evidence if (1) evidence of a vital fact is absent, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 783 (Tex. 2020) (citing *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004)); *City of Keller*, 168 S.W.3d at 810.  "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).  "More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014).  "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

When reviewing a factual sufficiency challenge, we "must consider and weigh all of the evidence," not just the evidence that supports the factfinder's finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998).  We must review the evidence in a neutral light. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).  If we set aside a judgment on the basis that a vital finding is not supported

by factually sufficient evidence, we must detail the evidence that is relevant to the issue and specify how the contrary evidence greatly outweighs the evidence that supports the finding. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

If a party challenges the factual sufficiency of an adverse finding on an issue for which it had the burden of proof at trial, it must demonstrate on appeal "that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem.*, 46 S.W.3d at 242. However, when a party challenges the factual sufficiency of the evidence supporting a finding on an issue for which it did not have the burden of proof at trial, we will set aside the finding only if the evidence in support of the finding is so weak or contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Pool*, 715 S.W.2d at 635; *Cowan v. Worrell*, 638 S.W.3d 244, 253 (Tex. App.—Eastland 2022, no pet.).

C. *Applicable Law*

Property taxes are unique because they, "by definition, are tied to land or personal property, unlike other types of taxes, which may be tied to a person or entity." *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 42 (Tex. 2018). That said, "property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed," and "[a] person is not relieved of the obligation because he no longer owns the property." TAX § 32.07(a) (West 2021). The Tax Code does not otherwise define the terms "owner" or "property owner." *Id.* § 1.04.

Property taxes are due upon receipt and become "delinquent if not paid before February 1 of the year following the year in which [they are] imposed." *Id.* § 31.02(a). "If property taxes are not paid by the owner or by another person [i.e., a transferee] . . . , the taxing unit may secure payment by legal action, including foreclosure on the lien, seizure and sale of personal property to satisfy the bill, or a

suit to enforce personal liability for taxes." *Sebastian Cotton*, 555 S.W.3d at 43; *see* TAX § 33.41(a).

When, as here, a property owner authorizes another to pay delinquent taxes imposed by a taxing unit on their real property, the tax lien may be transferred from the taxing unit to the transferee. TAX § 32.06(a-2)(1). The transferee, however, is statutorily required to record the transferred tax lien and the certification in the deed records of the county where the property is located. *Id.* § 32.06(d). Should the property owner default, the transferee may foreclose on the tax lien. *Id.* § 32.06(c); *ABN AMRO Mortg. Grp. v. TCB Farm & Ranch Land Invs.*, 200 S.W.3d 774, 777 (Tex. App.—Fort Worth 2006, no pet.). "Transferee" includes not only the original transferee, but any licensed "successor in interest to a tax lien that is transferred under this section." TAX § 32.06(a)(2)(B). The taxing unit shall then join the transferee of a tax lien under section 32.06 in a suit to foreclose a delinquent tax lien. *Id.* § 33.44(a).

Accordingly, to obtain a judicial foreclosure of its transferred tax lien, FNA 2019 was required to prove the existence of a valid, recorded transferred tax lien on the property, its status as a proper transferee or successor in interest, and an event of default on the underlying tax debt.

D. *Analysis*

Appellant principally alleges that Dominguez improperly transferred interests in the subject property and conspired with FNA 2019 to deprive him of ownership in 2020. Even assuming the truth of these unsupported allegations, they do not undermine the evidentiary basis supporting the judgment in favor of FNA 2019. Significantly, Appellant himself does not challenge his ownership of the property for the 2009–2016 tax years or when he executed the Note and Deed of Trust, nor does Appellant challenge the validity of any of the subsequent evidence identifying him as co-owner during this period.

Further, the record demonstrates that FNA 2019 successfully met its evidentiary burden at trial. The record contains the Note, Deed of Trust, assignment documents, and sworn authorizations transferring the tax lien to FNA DZ—all of which identify Appellant as co-owner of the property. *See* TAX § 32.06(a-2)(1). Appellant's affidavit includes his signature, lists his name as co-owner of the subject property, and describes the subject property. The transfer was properly recorded in Ector County property records, and the Ector County's Chief Appraiser's certified statement of payment for the 2009–2016 tax years and transfer appears in the record. *See id.* § 32.06(d). The record also contains the assignment transferring FNA DZ's interests to FNA 2019. *See id.* § 32.06(a)(2)(B). These documents collectively establish the existence of a transferred tax lien on Appellant's co-owned property and FNA 2019 as the successor in interest to the transferred tax lien. *See Fenlon v. Harris Cnty.*, 569 S.W.3d 783, 793 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (concluding there was sufficient evidence that a party was a successor in interest and possessed a valid tax lien where the record contained a sworn document authorizing transfer and tax collector's certified statement of payment and transfer); *cf. Ovation Servs., LLC v. Richard*, 624 S.W.3d 610, 618 (Tex. App.—Tyler 2021, no pet.) (concluding the successor in interest was not shown where there was an absence of a recorded transferred tax lien in the record).

Additionally, there is evidence of Appellant's default in the record and delinquent amount. There is an account statement and a copy of the notice of default and intent to accelerate sent to the property owners demonstrating the outstanding principal balance under the Note, the penalties and interest that had accrued on the principal balance, and the attorney's fees incurred. *See Fenlon*, 569 S.W.3d at 795. There was no controverting evidence presented. Accordingly, Appellant's allegation of a fraudulent transfer of title occurring "on or around" June 15, 2020, does not alter our conclusion that there is legally and factually sufficient evidence to

support the trial court's judgment awarding FNA 2019 $32,894.55 for the 2009–2016 tax years and foreclosure of the transferred tax lien. *See Formosa Plastics Corp.*, 960 S.W.2d at 48; *Pool*, 715 S.W.2d at 635.

Because Appellees did not rely on the default as an implied confession of liability, but instead introduced documentary proof establishing every vital element of their tax foreclosure claims, the evidence is legally and factually sufficient to sustain the judgment under a post-answer default standard of review. *See Tex. G & S Invs.*, 459 S.W.3d at 257. We overrule what we interpret to be Appellant's complaint.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

July 16, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

14